No. 73–537. KARLAN *v.* CITY OF CINCINNATI. Sup. Ct. Ohio. Certiorari granted, judgment vacated, and case remanded for further consideration in light of *Lewis* v. *City of New Orleans*, 415 U. S. 130 (1974). 

MR. JUSTICE DOUGLAS, dissenting.*

These cases all involve convictions under ordinances and statutes which punish the mere utterance of words variously described as "abusive," "vulgar," "insulting," "profane," "indecent," "boisterous," and the like.[1] The provisions are challenged as being unconstitutionally vague and overbroad. The "void for vagueness" doctrine is, of course, a due process concept implementing principles of fair warning and nondiscriminatory enforcement. Vague laws may trap those who desire to be law abiding by not providing fair notice of what is prohibited. *Papachristou* v. *City of Jacksonville*, 405 U. S. 156, 162 (1972); *United States* v. *Harriss*, 347 U. S. 612, 617 (1954). They also provide opportunity for arbitrary and discriminatory enforcement since those

---

*This opinion applies also to No. 73–544, *Lucas* v. *Arkansas, supra,* p. 919; No. 72–1379, *Kelly* v. *Ohio, supra,* p. 923; and No. 72–1738, *Rosen* v. *California, supra,* this page.

[1] The statutes and respective authoritative constructions are set forth in the Appendix to this opinion, *infra,* p. 929.

who apply the laws have no clear and explicit standards to guide them. *Coates* v. *City of Cincinnati,* 402 U. S. 611, 614 (1971); *Shuttlesworth* v. *Birmingham,* 382 U. S. 87, 90–91 (1965). Further, when a vague statute " 'abut[s] upon sensitive areas of First Amendment freedoms,' it 'operates to inhibit the exercise of [those] freedoms.' Uncertain meanings inevitably lead citizens to 'steer far wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked.' " *Grayned* v. *City of Rockford,* 408 U. S. 104, 109 (1972), quoting *Baggett* v. *Bullitt,* 377 U. S. 360, 372 (1964), and *Speiser* v. *Randall,* 357 U. S. 513, 526 (1958).

Overbreadth, on the other hand, "offends the constitutional principle that 'a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms.' " *Zwickler* v. *Koota,* 389 U. S. 241, 250 (1967), quoting *NAACP* v. *Alabama,* 377 U. S. 288, 307 (1964). A vague statute may be overbroad if its uncertain boundaries leave open the possibility of punishment for protected conduct and thus lead citizens to avoid such protected activity in order to steer clear of the uncertain proscriptions. *Grayned* v. *City of Rockford, supra,* at 109; *Dombrowski* v. *Pfister,* 380 U. S. 479, 486 (1965). A statute is also overbroad, however, if, even though it is clear and precise, it prohibits constitutionally protected conduct. *Aptheker* v. *Secretary of State,* 378 U. S. 500, 508–509 (1964); *Shelton* v. *Tucker,* 364 U. S. 479, 488 (1960).

The statutes before us punish the mere utterance of words. They thus attempt to regulate the delicate area of speech and they are all overbroad since "as authoritatively construed [they are] susceptible of application to speech, although vulgar or offensive, that is protected by

the First and Fourteenth Amendments." *Gooding* v. *Wilson*, 405 U. S. 518, 520 (1972). We have consistently held that "[i]t matters not that the words [the speaker] used might have been constitutionally prohibited under a narrowly and precisely drawn statute." *Ibid.* In the area of free speech, the value of protected expression is deemed to justify "attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity." *Dombrowski* v. *Pfister, supra,* at 486. The specific conduct involved is thus not relevant. "It is the ordinance on its face that sets the standard of conduct and warns against transgression. The details of the offense could no more serve to validate this ordinance than could the details of an offense charged under an ordinance suspending unconditionally the right of assembly and free speech." *Coates* v. *City of Cincinnati, supra,* at 616.

The landmark case in the area is *Chaplinsky* v. *New Hampshire,* 315 U. S. 568 (1942), which involved the conviction of a Jehovah's Witness for violation of a statute prohibiting "offensive or derisive" speech. There the State Supreme Court had narrowed the statute by construing it as applicable only to what were referred to as "fighting words" [2]—words which "by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Id.,* at 572. We held that the statute, as thus "narrowly drawn and limited," [3] *id.,* at 573, was constitutional.

We explained the rationale of *Chaplinsky*'s fighting-words limitation in *Terminiello* v. *Chicago,* 337 U. S. 1 (1949), which involved a conviction under a Chicago disorderly conduct ordinance. The case grew out of a

---

[2] See, e. g., *State* v. *Brown,* 68 N. H. 200, 38 A. 731 (1895).

[3] See *Cantwell* v. *Connecticut,* 310 U. S. 296, 311 (1940).

disturbance following a public address by Terminiello under the auspices of the Christian Veterans of America. In reversing the conviction, we explained:

> "The right to speak freely and to promote diversity of ideas and programs is therefore one of the chief distinctions that sets us apart from totalitarian regimes.
>
> "Accordingly a function of free speech under our system of government is to invite dispute . . . . Speech is often provocative and challenging. . . . That is why freedom of speech, though not absolute, *Chaplinsky* v. *New Hampshire* . . . is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." *Id.*, at 4.

The constitutional necessity of limiting this type of statute to words which " 'by their very utterance inflict injury or tend to incite an immediate breach of the peace' " was expressly reaffirmed in *Gooding* v. *Wilson, supra,* at 522, where we held facially unconstitutional a Georgia statute which proscribed "opprobrious" or "abusive" language and which had been held by state courts to apply to utterances which were "not 'fighting' words as *Chaplinsky* defines them." *Id.*, at 525.

This principle was again enunciated in *Lewis* v. *City of New Orleans,* 415 U. S. 130 (1974), and four cases are today remanded for reconsideration in light of *Lewis.* If the principle announced in *Lewis* were new, I would agree with this disposition. Only state courts can construe these statutes since "we lack jurisdiction authoritatively to construe state legislation." *United States* v. *Thirty-seven Photographs.* 402 U. S. 363, 369 (1971). Before we strike down a statute as facially unconstitutional,

the state courts should have the opportunity to construe the statute, if possible, as within our constitutional pronouncements. Under our constitutional scheme, federal courts were not designed as the only protectors of federal rights. Article VI, cl. 2, expressly directs that the "Constitution, and the Laws of the United States . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Thus "[s]tate courts are bound equally with the federal courts" to protect federal rights. *Public Service Comm'n v. Wycoff Co.*, 344 U. S. 237, 247 (1952). The decisions of this Court are to guide state courts in the exercise of this duty.

But experience has shown that such guidance is often unheeded. The duty of the States in this area has long been clear. After *Chaplinsky*, federal intervention in *Terminiello* should have been unnecessary. After *Chaplinsky* and *Terminiello*, *Gooding* should have been unnecessary. Yet after them all, the State Supreme Court in *Lewis*, on reconsideration in light of *Gooding*, again failed to narrow the ordinance and affirmed a conviction which we found necessary to reverse. The principle in *Lewis* was not new; it was not new in *Gooding*, or in *Terminiello*, or even in *Chaplinsky*.[4] State courts, however, have consistently shown either inability or unwillingness to apply its teaching. I thus see nothing to be gained by state court reconsideration in light of *Lewis*. I would reverse these judgments out of hand.

---

[4] See, *e. g., Cantwell v. Connecticut, supra.* Nor were *Gooding* and *Lewis* the only recent instances of its reaffirmance. See, *e. g., Cohen v. California*, 403 U. S. 15, 20 (1971); *Bachellar v. Maryland*, 397 U. S. 564, 567 (1970); *Street v. New York*, 394 U. S. 576, 592 (1969).

## APPENDIX TO OPINION OF DOUGLAS, J., DISSENTING

*Karlan* v. *City of Cincinnati,* No. 73–537, involves a violation of Cincinnati Municipal Code § 901–D4, which provides:

> "No person shall wilfully conduct himself or herself in a noisy, boisterous, rude, insulting or other disorderly manner, with the intent to abuse or annoy any person or the citizens of the city or any portion thereof . . . ."

The ordinance was held by the court below, 35 Ohio St. 2d 34, 298 N. E. 2d 573 (1973), to withstand facial constitutional attack on the authority of *Cincinnati* v. *Hoffman,* 31 Ohio St. 2d 163, 168, 285 N. E. 2d 714, 718–719 (1972), which, rather than limit the ordinance in *Chaplinsky* terms, gave it blanket approval: "As reasonably construed, the ordinance neither prohibits the lawful exercise of any constitutional right nor escapes the understanding of any person of 'common intelligence' who desires to obey it." The ordinance thus remains unconstitutionally overbroad since it prohibits words which are merely "rude" and has not been limited to words which "by their very utterance inflict injury or tend to incite an immediate breach of the peace."

*Lucas* v. *Arkansas,* No. 73–544, involves a violation of Ark. Stat. Ann. § 41–1412 (1964), which provides:

> "If any person shall make use of any profane, violent, vulgar, abusive or insulting language toward or about any other person in his presence or hearing, which language in its common acceptation is calculated to arouse to anger the person about or to whom it is spoken or addressed, or to

cause a breach of the peace or assault, [he] shall be deemed guilty of a breach of the peace . . . ."

In purporting to limit the statute, the court below held:

> "As we construe § 41–1412 it is narrowed to 'fighting words' addressed to, toward, or about another person in his presence or hearing, *which language in its common acceptation is calculated to arouse to anger the person about or to whom it is spoken or addressed or to cause a breach of the peace or an assault.*" 254 Ark. 584, 589, 494 S. W. 2d 705, 708 (1973). (Emphasis added.)

This construction leaves the statute overbroad since it permits punishment for words which, though not likely to cause a breach of the peace, are "calculated" to do so. In striking down a similar construction in *Gooding* v. *Wilson,* we said: " '[T]o make an offense of conduct which is "calculated to create disturbances of the peace" leaves wide open the standard of responsibility.' " 405 U. S. 518, 527, quoting *Ashton* v. *Kentucky,* 384 U. S. 195, 200 (1966). The construction here does not even require that the words be calculated to cause a breach of the peace; it is enough that they are calculated to arouse anger in the addressee.

*Kelly* v. *Ohio,* No. 72–1379, involves a violation of Codified Ordinances of the City of Kent § 509.02 (A) which provides:

> "[N]o person shall willfully conduct himself in a noisy, boisterous or other disorderly manner by either words or acts which disturb the good order and quiet of the Municipality."

While finding that petitioner's language constituted "fighting words," the court below did not construe the ordinance as limited to such words. The court below

merely held that petitioner's words could constitutionally be proscribed:

> "Defendant, maintaining freedom of speech is constitutionally protected, declares the ordinance is unconstitutional because it punishes both protected and unprotected conduct (i. e., by words or acts). We do not find the ordinance overbroad as to the words used herein, nor constitutionally protected premised on the evidence before the Court, hence neither the words nor acts herein are found to be constitutionally protected." Ohio Ct. App., No. 466 (July 31, 1972).

But, "[i]t matters not that the words [petitioner] used might have been constitutionally prohibited under a narrowly and precisely drawn statute," for petitioner may attack an overly broad statute without demonstrating that his own conduct could not be regulated by a more precisely drawn act. *Gooding* v. *Wilson,* 405 U. S., at 520.

*Rosen* v. *California,* No. 72–1738, involves Calif. Penal Code § 415, which provides:

> "Every person who maliciously and willfully disturbs the peace or quiet of any neighborhood or person, by loud or unusual noise, or by tumultuous or offensive conduct . . . or use[s] any vulgar, profane, or indecent language within the presence or hearing of women or children, in a loud and boisterous manner, is guilty of a misdemeanor . . . ."

There has been no limiting construction of the "vulgar" language component of the provision. The jury here was instructed that: "Vulgar means coarse, ill-bred, ill-mannered, rude . . . . Profane means serving to debase or defile that which is holy or worthy of reverence . . . .

Indecent means . . . hardly suitable." See L. A. Super. Ct. App. Dept., No. CR A 11557 (Jan. 2, 1973). It hardly needs stating that States are not free to penalize speech merely because it is "coarse," "ill-bred," or "hardly suitable."