263 N.W.2d 412 (1978)
In the Matter of the WELFARE OF S. L. J.
No. 47186.
Supreme Court of Minnesota.
February 17, 1978.
*414 Carolyn F. Rusch, Legal Asst. of Ramsey County, Inc., St. Paul, for appellant.
Warren Spannaus, Atty. Gen., St. Paul, William B. Randall, County Atty., Steven C. DeCoster, Asst. County Atty., St. Paul, for respondent.
Heard before SHERAN, C. J., and ROGOSHESKE, PETERSON, TODD, WAHL, *415 and IVERSON, JJ., and considered and decided by the court en banc.
ROGOSHESKE, Justice.
This is an appeal from an order of the juvenile division of the district court which confirmed a referee's finding of delinquency based on a conviction for disorderly conduct under Minn.St. 609.72, subd. 1(3), for saying "fuck you pigs" to two police officers. Because we find that the conviction for disorderly conduct cannot stand under § 609.72, subd. 1(3), as narrowly construed to punish only "fighting words," we reverse the finding of delinquency.
On August 13, 1975, at about 9:30 p. m., appellant, S. L. J., a 14-year-old girl, and her friend of the same age were questioned by two police officers who had just apprehended some teenage boys for paint sniffing. Based only on a hunch that the girls were somehow involved in either the original crime or the taking of the boys' bicycles, they were questioned about the whereabouts of the bicycles, the identities of the apprehended boys, and their own identities. According to appellant's testimony, Officer Anderson, one of the officers involved, also threatened to take them to the police station and then informed them that they had better hurry home because it was past their curfew.
After starting down the alley, appellant and her friend, at a point somewhere between 15 and 30 feet from the squad car in which the officers were sitting, turned and said to them "fuck you pigs." The officers conferred and then pursued the girls down the alley and arrested them for disorderly conduct under § 609.72, subd. 1, which reads as follows:
"Whoever does any of the following in a public or private place, knowing, or having reasonable grounds to know that it will, or will tend to, alarm, anger or disturb others or provoke an assault or breach of the peace, is guilty of disorderly conduct, which is a misdemeanor:
"(1) Engages in brawling or fighting; or
"(2) Disturbs an assembly or meeting, not unlawful in its character; or
"(3) Engages in offensive, obscene, or abusive language or in boisterous and noisy conduct tending reasonably to arouse alarm, anger, or resentment in others."
A petition was filed in juvenile court alleging that appellant was a delinquent person because she
"* * * did wrongfully and unlawfully engage in offensive, obscene or abusive language at Greenbrier and Case Sts., a public place, knowing or having reasonable grounds to know that such conduct would or would tend to arouse resentment in others." (Italics supplied.)
At the trial before a referee of juvenile court, Officer Anderson testified that he was "mad" and "upset" at the words used by the girls:
"I was mad. I was upset. They didn't have any right to say that to me. One of the thoughts that went through my head, I have a daughter four years younger. Should my daughter say something like that to an officer or anybody I'd be upset and ashamed as a parent. It would bother me."
During cross-examination, Officer Anderson admitted that he had received some sensitivity training on how to respond to name calling, and that, although angry, he did not react violently in this case or even consider such behavior because of the speaker's age, sex, and relative size. Appellant testified that she was upset by the officers' questions, but that she had not expected them to react to her remark.
The matter was continued to permit the parties to submit briefs on the constitutionality of the statute. After a hearing, the referee found that appellant was a delinquent. The juvenile court, in confirming this finding of delinquency, credited the testimony of the police officer over that of the child and concluded that the officer had suffered "resentment," a conclusion that is binding on this court unless clearly erroneous.
*416 The issues presented for decision in this appeal are: (1) Whether § 609.72, subd. 1(3), is unconstitutionally overly broad or vague on its face under the First and Fourteenth Amendments of the United States Constitution; (2) whether the statute can be narrowly construed to sustain its constitutionality; and (3) whether the evidence supports appellant's conviction for disorderly conduct[1] under the statute as narrowly construed.
We are confronted for the first time with a constitutional challenge to § 609.72,[2] which was adopted in 1963 as part of the revision of Minnesota's criminal laws. Clause (3) of § 609.72, subd. 1, under which appellant was charged, replaced Minn.St. 1961, § 615.15, which read as follows:
"Any person who shall use in reference to and in the presence of another, or in reference to or in the presence of any member of the family of another, abusive or obscene language, intended, or naturally tending to provoke an assault or any breach of the peace, shall be guilty of a misdemeanor."
Although the authors of the revision recognized that "the crime of disorderly conduct is commonly used by the police against those unable to defend themselves," Advisory Committee Comment, 40A M.S.A. p. 63, the statute as rewritten broadened, rather than narrowed, police discretion.
Whenever offensive language is the basis of a criminal charge, the court must determine whether that language is protected speech under the First and Fourteenth Amendments of the United States Constitution. Although this case arises in state court, state courts have a duty imposed by U.S.Const. art. VI, clause 2, to protect their citizens' enjoyment of Federal as well as state rights. As noted in Mr. Justice Douglas' dissent in Karlan v. City of Cincinnati, 416 U.S. 924, 928, 94 S.Ct. 1922, 1925, 40 L.Ed.2d 280, 281 (1974):
"* * * Under our constitutional scheme, federal courts were not designated as the only protectors of federal rights. Article VI, Clause 2, expressly directs that the `Constitution, and the Laws of the United States * * * shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.' Thus `[s]tate courts are bound equally with the federal courts' to protect federal rights. * * * The decisions of this Court are to guide state courts in the exercise of this duty."
The fact that the words used by appellant are vulgar, offensive, and insulting, and that their use is condemned by an overwhelming majority of citizens does not make them punishable under the criminal statutes of this state unless they fall outside the protection afforded to speech by the First Amendment.[3]
*417 To be a constitutional exercise of the police power of the state, a statute that punishes speech must be neither overly broad nor unduly vague. The United States Supreme Court has more vigilantly scrutinized statutes that regulate speech than those that control only conduct because vague and overly broad statutes threaten both to ensnare the unwary who are not provided with fair notice of what behavior is prohibited and to curtail protected speech by those fearful of violating the law. Thus, the court has required statutes proscribing speech alone to be more narrowly and specifically drawn.
Appellant alleges that § 609.72, subd. 1(3), is unconstitutional on its face because it is both vague and overly broad. The rationale of the void-for-vagueness doctrine was set out in Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222, 227 (1972):
"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute `abut[s] upon sensitive areas of basic First Amendment freedoms,' it `operates to inhibit the exercise of [those] freedoms.' Uncertain meanings inevitably lead citizens to `"steer far wider of the unlawful zone" * * * than if the boundaries of the forbidden areas were clearly marked.'"
See, also, Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). Although the overbreadth and vagueness doctrines are conceptually distinct, in the First Amendment context they tend to overlap, since statutes are often overly broad because their language is vague as to what behavior is proscribed. See, e. g., Lewis v. City of New Orleans, 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974); Karlan v. City of Cincinnati, supra.
In general, a statute can be said to be overly broad if it deters the exercise of First Amendment rights by unnecessarily punishing constitutionally protected along with unprotected activity. See, Thornhill v. Alabama, 310 U.S. 88, 97, 60 S.Ct. 736, 742, 84 L.Ed. 1093, 1100 (1940); NAACP v. Alabama, 377 U.S. 288, 307, 84 S.Ct. 1302, 1314, 12 L.Ed.2d 325, 338 (1964); Coates v. City of Cincinnati, 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214, 217 (1971). The Supreme Court applied this principle to the regulation of offensive speech in Gooding v. Wilson, 405 U.S. 518, 521, 92 S.Ct. 1103, 1106, 31 L.Ed.2d 408, 414 (1972):
"The constitutional guarantees of freedom of speech forbid the States to punish the use of words or language not within `narrowly limited classes of speech.' * * Even as to such a class, however, because `the line between speech unconditionally guaranteed and speech which may legitimately be regulated, suppressed, or punished is finely drawn,' * * * `[i]n every case the power to regulate must be so exercised as not, in attaining a permissible end, unduly to infringe the protected freedom.' * * * In other words, the statute must be carefully drawn or be authoritatively construed to punish only unprotected speech and not be susceptible of application to protected expression."
Ever since Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942), in which the Supreme Court examined a First Amendment challenge to a New Hampshire statute which prohibited the use of "offensive, derisive or annoying" language in a public place, such offensive-speech *418 statutes have been found to be constitutional only if criminal prosecution is permitted solely for "fighting words." See, Cohen v. California, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971); Gooding v. Wilson, supra; Plummer v. City of Columbus, 414 U.S. 2, 94 S.Ct. 17, 38 L.Ed.2d 3 (1973); Lewis v. City of New Orleans, supra. See, also, Rutzick, Offensive Language and the Evolution of First Amendment Protection, 9 Harv. Civil Rights-Civil Lib. L. Rev. 1. "Fighting words" have been defined as those "personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction," Cohen v. California, 403 U.S. 15, 20, 91 S.Ct. 1780, 1785, 29 L.Ed.2d 284, 291, or "`[words] which by their very utterance inflict injury or tend to incite an immediate breach of the peace.'" Lewis v. City of New Orleans, 415 U.S. 130, 132, 94 S.Ct. 970, 972, 39 L.Ed.2d 214, 218. Words that do not fit this definition, no matter how offensive they may be, are not subject to criminal sanctions; and, if the statute being scrutinized punishes more than "fighting words," it must either be struck down as facially overbroad or, if possible, construed narrowly to make it constitutional. The reasons for this judicial inflexibility when only speech is proscribed were explained in Cohen v. California, 403 U.S. 15, 24, 91 S.Ct. 1780, 1787, 29 L.Ed.2d 284, 293:
"* * * The constitutional right of free expression is powerful medicine in a society as diverse and populous as ours.
* * * * * *
"To many, the immediate consequence of this freedom may often appear to be only verbal tumult, discord, and even offensive utterance. * * * That the air may at times seem filled with verbal cacophony is * * * not a sign of weakness but of strength. We cannot lose sight of the fact that, in what otherwise might seem a trifling and annoying instance of individual distasteful abuse of a privilege, these fundamental societal values are truly implicated. That is why `[w]holly neutral futilities * * * come under the protection of free speech as fully as do Keats' poems or Donne's sermons,' * * * and why `so long as the means are peaceful, the communication need not meet standards of acceptability.'"
When the constitutionality of a statute that seeks to punish spoken words is facially challenged, the specific conduct responsible for the conviction being challenged is irrelevant. As the court stated in Gooding v. Wilson, 405 U.S. 518, 520, 92 S.Ct. 1103, 1105, 31 L.Ed.2d 408, 413, and re affirmed in Lewis v. City of New Orleans, 415 U.S. 130, 133, 94 S.Ct. 970, 972, 39 L.Ed.2d 214, 219:
"* * * It matters not that the words appellee used might have been constitutionally prohibited under a narrowly and precisely drawn statute. At least when statutes regulate or proscribe speech * * *, the transcendent value to all society of constitutionally protected expression is deemed to justify allowing `attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity.' * * * This is deemed necessary because persons whose expression is constitutionally protected may well refrain from exercising their rights for fear of criminal sanctions provided by a statute susceptible of application to protected expression."
See, also, Coates v. City of Cincinnati, 402 U.S. 611, 619, 91 S.Ct. 1686, 1691, 29 L.Ed.2d 214, 221 (White, J., dissenting); State v. Hipp, 298 Minn. 81, 86, 213 N.W.2d 610, 614 (1973). Thus, appellant in this case has standing to attack the disorderly conduct statute whether or not her behavior could be proscribed under a narrowly drawn, and thus constitutional, statute.
Turning to the language of the statute, it is clear that, as written, § 609.72, subd. 1(3), is both overly broad and vague. Since the statute punishes words alone"offensive, obscene, or abusive language" , it must be declared unconstitutional as a *419 violation of the First and Fourteenth Amendments unless it only proscribes the use of "fighting words." Section 609.72, subd. 1(3), however, punishes words that merely tend to "arouse alarm, anger, or resentment in others" rather than only words "which by their very utterance inflict injury or tend to incite an immediate breach of the peace."[4] Since the statute does not satisfy the definition of "fighting words," it is unconstitutional on its face.
Although § 609.72, subd. 1(3), clearly contemplates punishment for speech that is protected under the First and Fourteenth Amendments, we can uphold its constitutionality by construing it narrowly[5] to refer only to "fighting words."[6] See, e. g., State v. Hipp, supra (construction of Minn.St. 609.705[3], the unlawful assembly statute, narrowed to protect its constitutionality); State v. Rosenfeld, 62 N.J. 594, 303 A.2d 889 (1973), on remand from Rosenfeld v. New Jersey, 408 U.S. 901, 92 S.Ct. 2479, 33 L.Ed.2d 321 (1972); Karlan v. City of Cincinnati, 39 Ohio St.2d 107, 314 N.E.2d 162, certiorari denied, 419 U.S. 1056, 95 S.Ct. 640, 42 L.Ed.2d 654 (1974), on remand from 416 U.S. 924, 94 S.Ct. 1922, 40 L.Ed.2d 280 (1974), vacating and remanding 35 Ohio St.2d 34, 298 N.E.2d 573 (1973).
Having narrowly construed § 609.72, subd. 1(3), we must now determine whether the words "fuck you pigs" were "fighting words." The real test is whether, under the facts and circumstances of this case, appellant's mere utterance of these vulgar, offensive, insulting words would "`tend to incite an immediate breach of the peace,'" Lewis v. City of New Orleans, 415 U.S. 130, 132, 94 S.Ct. 970, 972, 39 L.Ed.2d 214, 218; are "inherently likely to provoke violent reaction," Cohen v. California, 403 U.S. 15, 20, 91 S.Ct. 1780, 1785, 29 L.Ed.2d 284, 291; or "hav[e] an immediate tendency to provoke retaliatory violence or tumultuous conduct by those to whom such words are addressed," State v. Hipp, 298 Minn. 81, 87, 213 N.W.2d 610, 614. The specific facts of the case are also important because, as in Lewis, whether words are "fighting words" depends on the circumstances surrounding their utterance.
Under this test, appellant's conviction for disorderly conduct cannot stand. While it is true that no ordered society would condone the vulgar language used by this 14-year-old child, and as the court found, her words were intended to, and did, arouse *420 resentment in the officers, the constitution requires more before a person can be convicted for mere speech. In this case, the words were directed at two police officers sitting in their squad car from a distance of 15 to 30 feet by a small, 14-year-old child who was on her way home when she turned to the officers and made her statement. With the words spoken in retreat from more than 15 feet away rather than eye-to-eye, there was no reasonable likelihood that they would tend to incite an immediate breach of the peace or to provoke violent reaction by an ordinary, reasonable person.[7] Thus, the state has failed to prove that under these circumstances the words uttered by appellant were "fighting words," and both her conviction for disorderly conduct and the finding of delinquency based on the conviction must be reversed.
Reversed.
OTIS, J., took no part in the consideration or decision of this case.
NOTES
[1] The fact that a juvenile in juvenile court, rather than an adult in county court, was charged under the statute has no bearing on the decision we reach. Although the ultimate finding here was one of delinquency, that does not make irrelevant the existence of the disorderly conduct conviction, which can be used after the juvenile becomes an adult to determine subsequent penal sentences.
[2] Although a predecessor statute, Minn.St. 1961, § 615.17, was upheld over the objection that it was vague and indefinite in State v. Reynolds, 243 Minn. 196, 66 N.W.2d 886 (1954), the court there was construing what was to become § 609.72, subd. 1, clause (1), rather than clause (3), which is under attack here. There is a great difference between clause (1), which proscribes conduct, and clause (3), which punishes speech, because speech is accorded special constitutional protection by the First and Fourteenth Amendments.
[3] The categories of speech that have been held unprotected by the First Amendment are: Fighting wordsChaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942); obscenityRoth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), and Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); libelGertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), and Time, Inc. v. Firestone, 424 U.S. 448, 96 S.Ct. 958, 47 L.Ed.2d 154 (1976); and incitementBrandenburg v. Ohio, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969). Since words can only be obscene if they are erotic, see, e. g., Cohen v. California, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971); Roth v. United States, supra, appellant's words cannot be said to be obscene.
[4] Chaplinsky v. New Hampshire, 315 U.S. 568, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031, 1035.
[5] The Supreme Court, in fact, has encouraged state supreme courts to sustain the constitutionality of their offensive-speech statutes by construing them narrowly to punish only fighting words. Thus, on the basis of Gooding and Cohen, it vacated and remanded for reconsideration Rosenfeld v. New Jersey, 408 U.S. 901, 92 S.Ct. 2479, 33 L.Ed.2d 321 (1972); Brown v. Oklahoma, 408 U.S. 914, 92 S.Ct. 2507, 33 L.Ed.2d 326 (1972); Lewis v. City of New Orleans, 408 U.S. 913, 92 S.Ct. 2499, 33 L.Ed.2d 321 (1972), and on the basis of its later decision in Lewis, it remanded Lucas v. Arkansas, 416 U.S. 919, 94 S.Ct. 1917, 40 L.Ed.2d 277 (1974); Kelly v. Ohio, 416 U.S. 923, 94 S.Ct. 1922, 40 L.Ed.2d 280 (1974); Rosen v. California, 416 U.S. 924, 94 S.Ct. 1922, 40 L.Ed.2d 280 (1974); Karlan v. City of Cincinnati, 416 U.S. 924, 94 S.Ct. 1922, 40 L.Ed.2d 280 (1974).
[6] There are a number of recent Minnesota cases in which similar language has been held by this court to constitute criminal behavior constitutionally punishable under disorderly conduct or breach of the peace statutes. See, e. g., City of St. Paul v. Mulnix, 304 Minn. 456, 232 N.W.2d 206 (1975) (affirmance of conviction for shouting obscenities along with conduct of a disorderly nature under St. Paul ordinance prohibiting "noise, riot, disturbance or improper diversion, to the annoyance or disturbance of the citizens, or other persons"); City of St. Paul v. Azzone, 287 Minn. 136, 177 N.W.2d 559 (1970) (affirmance of conviction for shouting obscenities at police officers under same ordinance); State v. Witherill, 286 Minn. 519, 174 N.W.2d 329 (1970) (affirmance of conviction for using foul and obscene language to police officer under Minneapolis ordinance prohibiting "the use of slanderous, foul, obscene, or indecent language"). Azzone and Witherill were both decided before the United States Supreme Court began to require the narrow construction of offensive-speech statutes, and Mulnix involved disorderly conduct which would have been sufficient to warrant a conviction without the addition of the offensive speech. Under our decision in this case, these statutes would have to be narrowly construed to punish only "fighting words," and thus they may have only limited precedential value.
[7] The arrest of this child under these circumstances appears to have been an overreaction by the police. Rather than exposing her to the ongoing stigma of criminality, a preferable approach would have been to march her home to her parents for parental discipline.