**STATE of Minnesota, Appellant,**

v.

**Kurtis Dean MACHHOLZ, Respondent.**

**No. CX–96–1865.**

Court of Appeals of Minnesota.

March 25, 1997.

Review Granted June 11, 1997.

Hubert H. Humphrey, III, Attorney General, St. Paul, for Appellant.

Raymond G. Schmitz, Olmsted County Attorney, Geoffrey A. Hjerleid, Assistant County Attorney, Rochester, for Appellant.

Peter C. Sandberg, Dunlap & Seeger, Rochester, for Respondent.

Considered and decided by KLAPHAKE, P.J., and WILLIS and MANSUR, JJ.*

## OPINION

KLAPHAKE, Judge.

This appeal is from a pretrial order dismissing a complaint charging respondent Kurtis Machholz with felony harassment. *See* Minn.Stat. § 609.749, subds. 2(7), 3(1) (1996).

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. I, § 10.

## FACTS

Machholz was charged with felony harassment for disrupting a gay rally in Rochester celebrating "National Coming Out Day." The complaint alleged that Machholz rode his horse through the group several times, swung the horse's reins forcing people to move away, knocked down the group's sign, and yelled various accusations at the group.

Machholz went to the police station the day after the incident to give his side of the story. He admitted riding through the group, but denied swinging the horse's reins at people. He admitted swinging the lead rope at the easel to knock it and the group's sign to the ground. Machholz described himself as a "horseback evangelist," and admitted that he rode his horse into the midst of the rally trying to "disperse 'em a little bit." He admitted telling the group that they were "going against God's natural law," they should repent, they were responsible for AIDS, they were corrupting children, and that there were no homosexuals in heaven. Later in the interview, he denied any intent to disperse the group.

Machholz moved to dismiss the complaint on the grounds that the felony harassment statute was unconstitutional. The trial court granted the motion, concluding that the definition of harassing conduct in Minn.Stat. § 609.749, subds. 1 and 2(7) was unconstitutionally vague, and that the felony enhancement provision in subdivision 3(1), making bias-motivated harassment a felony, was overbroad. The state filed this appeal.

## ISSUES

I. Is the harassment statute unconstitutionally vague or overbroad?

II. Is the felony enhancement provision for bias-motivated harassment unconstitutionally overbroad?

## ANALYSIS

■ In a pretrial appeal, the state generally has the burden of showing clearly and unequivocally that the trial court erred in its judgment. See State v. Webber, 262 N.W.2d 157, 159 (Minn.1977). But the constitutionality of a statute is a legal issue reviewed de novo by an appellate court. See, e.g., State v. Stallman, 519 N.W.2d 903, 906 (Minn.App. 1994).

### I.

Machholz was charged under Minn.Stat. § 609.749, subd. 2(7) (1996), which makes it a criminal offense when one

(7) engages in any other harassing conduct that interferes with another person or intrudes on the person's privacy or liberty.

"Harassing conduct" is defined as intentional conduct committed in a manner that

(1) would cause a reasonable person under the circumstances to feel oppressed, persecuted, or intimidated; and

(2) causes this reaction on the part of the victim.

Minn.Stat. § 609.749, subd. 1 (1996). The trial court found this provision to be unconstitutionally vague.

■ A penal statute is unconstitutionally vague if it does not define the criminal offense so that ordinary people can understand what conduct is prohibited and if it encourages arbitrary and discriminatory enforcement. See Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). A statute is void for vagueness if persons of common intelligence must necessarily guess at its meaning or differ as to its application. See State v. Newstrom, 371 N.W.2d 525, 528 (Minn.1985). The more important aspect of the void-for-vagueness doctrine is the requirement of guidelines to prevent arbitrary and discriminatory enforcement. See Kolender, 461 U.S. at 358, 103 S.Ct. at 1858.

■ A defendant who asserts that a statute is unconstitutionally vague must show that it is vague with respect to his own alleged conduct. See State v. Grube, 531 N.W.2d 484, 490 (Minn.1995). But a defendant claiming the statute is unconstitutionally overbroad may challenge the statute on its face. See State v. Castellano, 506 N.W.2d 641, 644–45 (Minn.App.1993).

■ The Minnesota Supreme Court recently construed the harassment statute to require specific intent in State v. Orsello, 554

N.W.2d 70 (Minn.1996). The court did so, in part, to avoid a finding that the statute was unconstitutionally vague. *Id.* at 76–77. The state argues that *Orsello* is controlling on the issue of vagueness. But we need not address the precise effect of *Orsello* because the harassment statute, as construed in *Orsello*, plainly applies to Machholz's alleged conduct, particularly given his admission to police that he intended to disperse the group. Riding a horse into the midst of a group of people, swinging the reins so as to knock over an easel, and shouting denunciations directed at the people present is plainly harassing conduct calculated to cause a reasonable person in the targeted group to feel "oppressed, persecuted, or intimidated." Minn.Stat. § 609.749, subd. 1(1) (1996).

Because we conclude the statutory definition of harassment is not unconstitutionally vague, we must address Machholz's claim of overbreadth.

■ In order to invalidate a statute on its face, the overbreadth must be not only "real but 'substantial.'" *Castellano*, 506 N.W.2d at 645. In order to be considered substantially overbroad, the statute must infringe on First Amendment interests and reach "a substantial number of impermissible applications." *New York v. Ferber*, 458 U.S. 747, 771, 102 S.Ct. 3348, 3362, 73 L.Ed.2d 1113 (1982). Machholz argues that the harassment statute infringes on a substantial area of First Amendment activity that happens to oppress or intimidate others or cause them to feel persecution. He argues that the ordinary expression of many political views may cause this reaction.

Machholz argues that public speech about hunger, poverty, or debt could fall within the prohibition of the statute. But while many people may find public discussion of unpleasant or challenging topics to be "oppressive," this term must be read along with the associated statutory terms of "persecut[ion]" and "intimidat[ion]." Read together, the terms suggest a sense of *personal* oppression, not a general feeling of social unease. *See, e.g., Toro Co. v. McCulloch Corp.*, 898 F.Supp. 679, 683 n. 4 (D.Minn.1995) (terms capable of several meanings are construed with reference to associated words in statute).

■ The conduct covered by the harassment statute is virtually equivalent to the "fighting words" category of unprotected speech. *See Chaplinsky v. New Hampshire*, 315 U.S. 568, 571–72, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942) (right of free speech does not extend to obscenity, libel, and insulting or "fighting" words). It is well-established that "fighting words" enjoy no First Amendment protection. *See, e.g., In re Welfare of S.L.J.*, 263 N.W.2d 412, 417–18 (Minn.1978) (construing disorderly conduct statute as prohibiting only "fighting words"). If the harassment statute were directed solely at speech, it would be overbroad if it prohibited any words other than "fighting words" or other non-protected speech. *See id.* at 418–19. Although the harassing "conduct" prohibited by the harassment statute encompasses expressive activity, including speech, it is not a prohibition directed at speech per se. Thus, the statute may be struck down as constitutionally overbroad only if it extends to a substantial area of speech beyond "fighting words."

■ "Fighting words" are defined as words that "when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction." *Cohen v. California*, 403 U.S. 15, 20, 91 S.Ct. 1780, 1785, 29 L.Ed.2d 284 (1971). They are words that by their very utterance inflict injury or tend to incite an immediate breach of the peace. *In re Welfare of S.L.J.*, 263 N.W.2d at 419. The disturbing political discourse that Machholz contends falls within the harassment statute's prohibition is not classified as "fighting words" because it generally implies no "direct personal insult" to the listener. *See Cohen*, 403 U.S. at 20, 91 S.Ct. at 1786 (words "Fuck the Draft" worn on jacket in courthouse corridor could not be criminally punished as "fighting words"). Ordinary political discourse also falls outside the definition of harassing conduct in Minn.Stat. § 609.749, and for a similar reason.

To the extent it prohibits speech or other expressive activity, the harassment statute prohibits only expressive activity that is intended to, and would reasonably be expected

to, cause feelings of personal "oppress[ion], persecut[ion], or intimidat[ion]," Minn.Stat. § 609.749, subd. 1(1) (1996). Although the statute is not limited to expressive activity that tends to cause an immediate violent reaction ("fighting words"), it does not extend very far beyond that. The supreme court has held, in both *S.L.J.* and *R.A.V.*, that speech tending to arouse "alarm, anger or resentment" in others can be construed as referring to "fighting words." *In re Welfare of R.A.V.*, 464 N.W.2d 507, 510 (Minn.1991), *rev'd on other grounds, R.A.V. v. City of St. Paul*, 505 U.S. 377, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992); *S.L.J.*, 263 N.W.2d at 419. Expressive conduct that tends to cause feelings of "oppress[ion], persecut[ion], or intimidat[ion]" is virtually indistinguishable from conduct that tends to arouse "alarm, anger or resentment."

The Supreme Court has recognized that a state may "prevent a speaker from intentionally provoking a given group to hostile reaction." *Cohen*, 403 U.S. at 20, 91 S.Ct. at 1786. The harassment statute, as construed in *Orsello*, requires specific intent to cause feelings of "oppress[ion], persecut[ion], or intimidat[ion]." We conclude that this prohibition is not unconstitutionally overbroad.

## II.

The trial court found that the provision making harassment a felony if it is bias-motivated is unconstitutionally overbroad. That statute makes harassing conduct a felony if it is committed

> because of the victim's or another's actual or perceived race, color, religion, sex, sexual orientation, disability as defined in section 363.01, age, or national origin * * *.

Minn.Stat. § 609.749, subd. 3(1) (1996).

■ The United States Supreme Court has held that an ordinance prohibiting bias-motivated speech or expressive activity reasonably tending to arouse anger, alarm, or resentment in others was facially unconstitutional. *R.A.V.*, 505 U.S. at 391, 112 S.Ct. at 2547. The *R.A.V.* Court held that, even though the ordinance, as construed by the Minnesota Supreme Court, extended only to "fighting words," it impermissibly singled out certain "fighting words" based solely on their content. *Id.* at 386, 112 S.Ct. at 2545. But the Supreme Court declined to extend that rationale to a statute that did not criminalize bias-motivated speech or conduct, but only enhanced the penalty for otherwise criminal behavior that was motivated by bias. *Wisconsin v. Mitchell*, 508 U.S. 476, 113 S.Ct. 2194, 124 L.Ed.2d 436 (1993). Minnesota's harassment statute does not define harassing conduct in terms of its bias motivation, it only enhances the offense to a felony if such motivation is present. *See* Minn. Stat. § 609.749, subd. 3(1). The *Mitchell* holding, therefore, is controlling in this case. The felony enhancement provision is not unconstitutionally overbroad.

## DECISION

The definition of harassing conduct in Minn.Stat. § 609.749, subds. 1 and 2(7) is not unconstitutionally vague as applied to appellant's conduct, nor is it overbroad. The felony enhancement provision for bias-motivated harassment in § 609.749, subd. 3(1) is not unconstitutionally overbroad.

**Reversed.**