*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0356**

State of Minnesota,
Respondent,

vs.

Jeffrey Kevin Nelson,
Appellant.

**Filed December 22, 2014
Affirmed
Hooten, Judge**

Chisago County District Court
File No. 13-CR-13-107

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Janet Reiter, Chisago County Attorney, Ryan M. Flynn, Assistant County Attorney, Megan E. Kelly, Certified Student Attorney, Center City, Minnesota (for respondent)

Barrie Schumack, Eagan, Minnesota; and

Nadia Wood, St. Paul, Minnesota (for appellant)

Considered and decided by Rodenberg, Presiding Judge; Hooten, Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HOOTEN**, Judge

On appeal from his conviction for disorderly conduct, appellant argues that the evidence was insufficient to sustain the conviction. We affirm.

FACTS

On February 2, 2013, appellant Jeffrey Nelson entered a liquor store and had an altercation with the clerk working behind the cash register. In connection with this incident, police issued Nelson a citation for disorderly conduct under Minn. Stat. § 609.72, subd. 1(3) (2012), and the state later charged Nelson with criminal trespass in addition to disorderly conduct. After Nelson's pretrial motion to dismiss for lack of probable cause was denied, a bench trial was held on September 19, 2013.

At trial, the clerk testified that he had had previous confrontations with Nelson, and had witnessed "heated exchanges" between Nelson and the clerk's wife. The clerk said that Nelson had been to the liquor store before when the clerk was working, and Nelson would have recognized him from their previous encounters. The clerk further testified that when Nelson entered the liquor store on February 2, 2013, he "proceeded to cuss and swear," calling the clerk a "f--king a--hole" and a "piece of sh-t" in the presence of 10 to 15 liquor store customers. The clerk indicated that he found these statements offensive, particularly because he was at work and Nelson was yelling so loudly that the other customers could hear him. Although the clerk told Nelson that he needed to leave, Nelson "continued to cuss and swear," and refused to leave until the clerk told him he was calling the police. As Nelson left the liquor store, he declared that he would be waiting outside for the police.

Nelson testified to a somewhat different version of events. Nelson stated that as soon as he walked into the liquor store, the clerk immediately confronted him and asked what he was doing there. Nelson asked what was on sale, to which the clerk responded,

"There's nothing until Monday. You need to get out of here." As Nelson turned to leave, the clerk again told him that he needed to leave and that he was calling the police. As Nelson walked out the door, he called the clerk either "a piece of sh-t" or a "worthless piece of sh-t," but testified that he never called the clerk a "f--king a--hole." Nelson acknowledged that he was once previously ordered by a court not to come into contact with the clerk, but denied that he entered the store that day to confront the clerk.

Sergeant Pouti testified that he arrived at the liquor store after hearing a radio report regarding a "customer harassing an employee or causing a disturbance at the liquor store." Upon his arrival, he noted that Nelson was standing outside the store with an adult female, who was later identified as the clerk's aunt. They both advised Sergeant Pouti that Nelson called the clerk a "piece of sh-t" while he was in the store. At trial, the clerk's aunt confirmed that she heard Nelson say, "You're a worthless piece of sh-t" to the clerk. She further testified that she did not hear Nelson use the word "f--king" when speaking with the clerk.

The district court found Nelson guilty of disorderly conduct. The district court summarized the witnesses' testimony, and "d[id] not find [Nelsons's] testimony credible regarding his version of events." Based on its finding that Nelson called the clerk a "f--king a--hole" and a "piece of sh-t" or "worthless piece of sh-t," the district court concluded that, as "a matter of common knowledge," these were "fighting words" that "clearly . . . constitute personally offensive epithets that are likely to provoke a violent reaction or incite an immediate breach of peace by the person to whom such words are addressed." The district court found Nelson's conduct akin to the defendant in *City of*

3

*Little Falls v. Witucki*, 295 N.W.2d 243 (Minn. 1980), in which the supreme court upheld a disorderly conduct conviction for use of fighting words.

Nelson made a post-verdict motion for judgment of acquittal, which was subsequently denied by the district court. At sentencing, Nelson was ordered to pay a $120 fine with an $80 surcharge. This appeal followed.

## D E C I S I O N

## I.

Nelson first argues that his speech is protected by the First Amendment, and cannot be punished as "fighting words" without violating the federal and Minnesota constitutions. Nelson asserts that the "archaic 'fighting words' doctrine has not been used [by the United States Supreme Court] to uphold a conviction since World War II [and] should not be resuscitated to do so here." While citing a string of cases in which the United States Supreme Court has vacated convictions for punishing protected speech, he cites no authority providing that speech deemed to be "fighting words" is protected under the First Amendment. In fact, the Supreme Court recently cited the "fighting words" doctrine in *Chaplinsky* as providing one of the few "historic and traditional categories" of speech that can be restricted based on content. *United States v. Alvarez*, 132 S. Ct. 2357, 2544 (2012) (citing *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S. Ct. 766 (1942)). The Minnesota Supreme Court has explicitly held that the disorderly conduct statute can punish speech in accordance with the First Amendment if applied only to "fighting words." *In re Welfare of S.L.J.*, 263 N.W.2d 412 (Minn. 1978). As seen in the cases below, Minnesota courts have continued to apply this doctrine to narrow

4

the reach of the disorderly conduct statute in light of First Amendment concerns. The "fighting words" category of unprotected speech remains good law and is appropriate for application in this case.

**II.**

Nelson primarily contends that the evidence was insufficient to support his conviction of disorderly conduct because his speech did not constitute fighting words. Disorderly conduct charges are "closely scrutinized" on appeal. *In re Welfare of M.A.H.*, 572 N.W.2d 752, 757 (Minn. App. 1997) (quotation omitted). First Amendment challenges to disorderly conduct adjudications are analyzed under a "hybrid" framework: "This court will review the evidence in the light most favorable to the state and then determine, as a matter of law, whether the defendant's language under that set of circumstances falls outside the protection of the First Amendment." *M.A.H.*, 572 N.W.2d at 757. We defer to the district court as the "exclusive judge of witness credibility," and we "assume[] the factfinder believed the evidence supporting the state's case and disbelieved contrary evidence." *State v. Super*, 781 N.W.2d 390, 396 (Minn. App. 2010), *review denied* (Minn. June 29, 2010).

Minn. Stat. § 609.72, subd. 1(3) defines disorderly conduct to include an individual who:

> [K]nowing, or having reasonable grounds to know that it will, or will tend to, alarm, anger, or disturb others or provoke an assault or breach of the peace . . . :
>
> (3) engages in offensive, obscene, abusive, boisterous, or noisy conduct or in offensive, obscene, or abusive language

tending reasonably to arouse alarm, anger or resentment in others.

The Minnesota Supreme Court has narrowed the reach of the "offensive, obscene, or abusive language" portion of the statute by limiting its reach to "fighting words" as defined by the United States Supreme Court. *S.L.J.*, 263 N.W.2d at 419. The fighting words doctrine prohibits two categories of utterances: incitement of group violence, and personal insults. *M.A.H.*, 572 N.W.2d at 756. The first category of fighting words is speech meant to "intentionally provoke a given group to a hostile reaction," and "would tend to incite an immediate breach of peace." *Id.* at 756 (quotations omitted); *see also State v. Lynch*, 392 N.W.2d 700, 704 (Minn. App. 1986) (upholding conviction when defendant's speech incited a club-brandishing crowd). The second category is "insults personally directed at an individual." *M.A.H.*, 572 N.W.2d at 756. These insults must "have an immediate tendency to provoke retaliatory violence or tumultuous conduct by those to whom such words are addressed." *S.L.J.*, 263 N.W.2d at 419 (quotation omitted). Whether a defendant's speech rises to the level of fighting words depends on the specific facts and circumstances of the case. *Lynch*, 392 N.W.2d at 704.

This case involves the second category of fighting words. Viewed in the light most favorable to the state, the evidence shows that Nelson was "loud, very loud" and "yelling" at the clerk inside the liquor store, calling him a "f--king a--hole" and a "piece of sh-t" in the presence of 10 to 15 customers in the store. The clerk found these statements "personally . . . offensive," especially because he was at work at the time and was concerned about getting Nelson out of the store so "the other customers [wouldn't]

hav[e] to deal with that." The clerk testified on cross-examination that the other customers "looked confused" due to Nelson's words to the clerk. After being asked to leave the liquor store, Nelson refused to leave but instead "continued to cuss and swear" at the clerk. Nelson only left after the clerk picked up the telephone and announced he would call the police. Further, this was not a confrontation between strangers—the clerk had "many run-ins" with Nelson in the past, and had seen "heated exchanges" before between his wife and Nelson.

We agree with the district court that the present case is similar to *Witucki*. In that case, the defendant's vulgar language and name-calling at an on-duty bartender was held to be fighting words punishable under the disorderly conduct statute. *Witucki*, 295 N.W.2d at 244, 246. The bartender in *Witucki* was especially bothered by the obscenities directed at her because she was the only employee on duty and had no way to leave the situation. *Id*. at 244. Nelson's profanities were likewise "directed at and . . . intended to be about a person," namely the clerk. *Id.* at 245 (quotation omitted). Nelson "directly insult[ed] and intimidate[ed] an innocent person." *See id.* Further, the clerk "was essentially a captive audience" because he was the only employee on duty and could not leave the liquor store. *Id*. Under similar circumstances, the *Witucki* court ruled that "the abusive language hurled by defendant at [the victim] could readily be found by a jury to be inherently likely to incite violence." *Id*. While the clerk did not retaliate by escalating the confrontation into a physical assault, that does not foreclose our fighting words conclusion. As we recognized in *Witucki*, the fact that the clerk "exercised responsible

7

and mature forebearance in not retaliating cannot be relied upon by defendant to escape responsibility for his own actions." *Id.* at 246.

Moreover, we can distinguish fighting words cases involving obscenities spoken to law enforcement from speech directed at ordinary citizens like the store clerk. *See, e.g.*, *S.L.J.*, 263 N.W.2d at 415; *In re Welfare of T.L.S.*, 713 N.W.2d 877, 879 (Minn. App. 2006). A police officer, unlike a store clerk, is trained to deal with unruly citizens. "[O]fficers expect to deal with abusive behavior on a regular basis," and may be targets of disorderly conduct only when "subjected to . . . indignities that go far beyond what any other citizen might reasonably be expected to endure." *M.A.H.*, 572 N.W.2d at 758 (quotation omitted). A store clerk at his place of work should not be expected to tolerate the same level of abuse as a trained police officer who often deals with intoxicated or mentally ill persons.

We conclude that Nelson's speech constituted fighting words because his language was "inherently likely to provoke violent reaction" from the clerk. *S.L.J.*, 263 N.W.2d at 419 (quotation omitted). Nelson's speech falls outside the ambit of First Amendment protection, and therefore the district court did not err in finding him guilty of disorderly conduct under Minn. Stat. § 609.72, subd. 1(3).

**III.**

Even if Nelson's speech did not constitute fighting words, the record provides sufficient evidence to support Nelson's disorderly conduct conviction based on his conduct alone. "[O]ffensive, obscene, abusive, boisterous, or noisy conduct" that a person knows would "tend[] reasonably to arouse alarm, anger, or resentment in others,"

8

is punishable as disorderly conduct. Minn. Stat. § 609.72, subd. 1(3). Even if there is no showing that a defendant used fighting words, the defendant's *conduct*, including his or her *manner* of speech separate from its content, may violate the statute. *T.L.S.*, 713 N.W.2d at 879, 880–81 (finding probable cause to arrest juvenile defendant for disorderly conduct when defendant was "shrieking" obscenities so loudly that it was "disruptive to the running of the school"); *see also McCarthy*, 659 N.W.2d at 811 (upholding conviction when defendant interrupted football game, put his hands on referee, and refused to leave when asked); *State v. Klimek*, 398 N.W.2d 41, 43 (Minn. App. 1986) (upholding conviction because defendant followed the victim to her car and proceeded to shake his fist at her in a threatening manner); *State v. Ackerman*, 380 N.W.2d 922, 926 (Minn. App. 1986) (upholding conviction when defendant was "yelling and swearing" as to alarm others and fought with officers when they arrived).

Here, Nelson yelled obscenities that offended the clerk and were heard by the other customers at the liquor store. Nelson also refused to leave, even though the clerk, with whom he had had prior confrontations, repeatedly asked him to do so, and then only left when the clerk sought police assistance. Based upon this record, we conclude that Nelson's conduct was "boisterous[] or noisy" and "tend[ed] reasonably to arouse alarm, anger, or resentment in others" within the meaning of section 609.72, subdivision 1. Apart from whether Nelson's speech constituted "fighting words," there was sufficient evidence regarding his conduct to support his disorderly conduct conviction.

**Affirmed.**