*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0858**

State of Minnesota,
Respondent,

vs.

Frederick Henry Heidmann,
Appellant.

**Filed May 13, 2024
Affirmed
Ross, Judge**

Crow Wing County District Court
File No. 18-CR-20-2969

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Donald F. Ryan, Crow Wing County Attorney, Brainerd, Minnesota; and

Michael D. Hagley, Special Assistant County Attorney, Duluth, Minnesota (for respondent)

Edward R. Shaw, Ed Shaw Law, Brainerd, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Ross, Judge; and Bjorkman, Judge.

**NONPRECEDENTIAL OPINION**

**ROSS**, Judge

Nisswa mayor Frederick Heidmann approached and began arguing with police officers as they engaged with the occupants of a car they had stopped on a busy highway

near Nisswa. Heidmann appeals from his consequent conviction of disorderly conduct, arguing that the conviction violates his First Amendment right to free speech, that the evidence does not support the guilty verdict, and that the district court improperly instructed the jury. Because the evidence of Heidmann's conduct, which is not protected by the First Amendment, sufficiently supports the verdict, and because the district court acted within its discretion by refusing to include Heidmann's requested jury instruction, we affirm.

**FACTS**

On an August 2020 evening, Nisswa and Pequot Lakes police officers stopped a car for an equipment violation just south of Nisswa on Highway 371. That stretch of highway is divided and busy, with two lanes of northbound and two lanes of southbound traffic. The stopped car and the squad cars were lined up along the side of the highway, immediately outside the fog line. Frederick Heidmann, the then-mayor of Nisswa, saw the traffic stop from across the highway.

The officers spoke with the stopped car's occupants and decided to search the car. They asked the occupants to step out of the car so one of them could conduct the search. An officer directed them to stand beside the rear of one of the squad cars, shielded from highway traffic. One officer began searching the car, and another continued speaking with the occupants. At that point, Heidmann, who had been watching these events, drew the attention of the occupants and officers as he began crossing the busy highway with his leashed dog and shouting toward the officers.

2

Heidmann approached the officers from the rear of the traffic stop, walking on the highway shoulder behind one of the squad cars. The officer then instructed the occupants to return to their car and moved to intercept Heidmann. Heidmann confronted the officer, demanding to know what the officers were doing. The officer instructed Heidmann to back away and stand clear of the highway, because Heidmann was standing just outside the lane of traffic with his loosely leashed dog. Heidmann refused to back away. He pointed at the officers and shouted at them. Highway traffic raced by within a few feet of Heidmann, his dog, and the officer. The other officer left the occupants involved in the traffic stop and joined in directing Heidmann to step back. Heidmann, facing the officers with his back to oncoming traffic, would not step back and continued to scold the officers, questioning their purpose, while swearing and gesturing aggressively. Rather than move back as directed, Heidmann stepped closer to the officers. While he argued with them, his dog pulled at the leash and crossed the fog line, entering the highway. The officer quickly grabbed the loose leash and pulled the dog back from the highway as Heidmann continued to contest the officer's authority to stop the car and investigate its occupants. Heidmann's dog eventually slipped off its leash and ran between the squad cars.

Heidmann followed and collected the dog, still arguing, and he finally walked away while continuing to reprimand the officers with a raised voice. The officers turned their attention back to the occupants of the stopped car. Minutes later, just after the officers completed their investigation, Heidmann drove his car back to the scene and parked. He approached the stopped car on foot, and the officers arrested him. The state charged

Heidmann with one count of disorderly conduct. A jury found him guilty based on evidence that supports the facts just described, and the district court fined him $285.

Heidmann appeals.

**DECISION**

Heidmann challenges his disorderly-conduct conviction. For the following reasons, we are unconvinced by his arguments that the conviction violates his First Amendment right to free speech, that the evidence does not support the guilty verdict, and that the district court improperly instructed the jury.

**I**

Heidmann's First Amendment and evidence-sufficiency contentions are entwined because of the relationship between the disorderly-conduct statute and the right to free speech. We evaluate sufficiency-of-the-evidence challenges by carefully examining the record to consider whether "the facts and the legitimate inferences drawn from them would permit the factfinder to reasonably conclude that the defendant was guilty beyond a reasonable doubt." *State v. Waiters*, 929 N.W.2d 895, 900 (Minn. 2019) (quotation omitted). The disorderly-conduct statute purportedly prohibits "offensive, obscene, abusive, boisterous, or noisy conduct" as well as "offensive, obscene, or abusive language" that "tend[s] reasonably to arouse alarm, anger, or resentment in others" when the actor "[has] reasonable grounds to know that [his conduct or words] will, or will tend to, alarm, anger or disturb others or provoke an assault or breach of the peace." Minn. Stat. § 609.72, subd. 1 (2020). We say "purportedly" because the statute sweeps too broadly by including speech protected under the First Amendment. The Minnesota Supreme Court has narrowed

4

its scope, holding that the statute's regulation of offensive, obscene, or abusive language applies only if the speech constitutes fighting words. *In re Welfare of S.L.J.*, 263 N.W.2d 412, 418–19 (Minn. 1978). We agree with Heidmann that his statements to the police officers do not constitute fighting words. But his confrontation with police also involved conduct.

We are satisfied that Heidmann's aggressive, disruptive conduct—irrespective of the content of his constitutionally protected speech—violated the disorderly-conduct statute. Even when the substance of a defendant's words themselves are protected, "offensive, obscene, abusive, boisterous, or noisy *conduct*," which violates the statute, is not. *See* Minn. Stat. § 609.72, subd. 1(3) (emphasis added); *see also In re Welfare of T.L.S.*, 713 N.W.2d at 877, 881 (Minn. App. 2006) (holding that officers had probable cause to arrest juvenile for disorderly conduct based on the volume of her profanities inside a school); *cf. City of St. Paul v. Mulnix*, 232 N.W.2d 206, 208 (Minn. 1975) (affirming conviction for violating municipal disorderly-conduct ordinance in the face of constitutional challenge based on the defendant's "shouting and screaming" of profanities). The evidence sufficiently permitted the jury to find that Heidmann engaged in boisterous or noisy conduct. One of the officers' body-worn cameras shows that Heidmann's conduct challenging the officers' authority to investigate during the traffic stop instantly drew the attention of the officer and the stopped car's occupants as Heidmann walked across the divided highway toward them. His confrontational and aggressive approach while challenging the officers required them to divert their attention from the individuals under investigation and focus exclusively on him. Heidmann persisted in his roadside challenge,

5

moving himself closer to the officers even after they ordered him to back away. His posturing, angry bickering, and refusing to step back required officers to continue engaging with him perilously close to passing traffic at the highway's fog line. His boisterous contentions and combative mannerisms appear to have endangered himself, his dog, and the officers. A fact-finder could also reasonably infer that Heidmann's confrontation so close to the roadway likely distracted passing drivers, needlessly risking a serious traffic collision at dangerous speeds. The evidence of Heidmann's conduct apart from his protected speech, considered in the light most favorable to the guilty verdict, is sufficient to prove that it was disorderly under the statute.

## II

Heidmann's challenge to the jury instruction also fails. We review a district court's jury instructions for an abuse of discretion. *State v. Taylor*, 869 N.W.2d 1, 14–15 (Minn. 2015). A district court abuses its discretion if its instructions "confuse, mislead, or materially misstate the law." *Id.* (quotation omitted). The district court instructed the jury using the language of the statute, which included the words "alarm, anger, or disturb others" over Heidmann's objection. *See* Minn. Stat. § 609.72, subd. 1(3). Heidmann argues that the district court should have instructed the jury that if it found his conduct consisted only of speech, then the jury had to find the speech consisted of fighting words to convict him. But the district court instructed the jury sufficiently, advising that if it found Heidmann's conduct consisted "only of offensive, obscene or abusive language," it could convict only if it "also find[s] that the words used were fighting words." The district court

6

then defined fighting words for the jury. The district court's instructions did not constitute an abuse of discretion.

**Affirmed.**